DAVENPORT *v.* CENTERVILLE WATER & ELECTRIC CO.

1. WATERS AND WATERCOURSES—FLOODING LAND—DAMS—EVIDENCE —BURDEN OF PROOF.
    In a suit by landowners to enjoin defendant from raising the water in a stream by a new dam to a greater height than was permitted by a former one, the burden

of proof was upon plaintiffs to establish their case by a preponderance of the evidence.

2. SAME—HEIGHT OF DAM—USE OF FLASHBOARDS.

Where plaintiffs' proofs failed to show that the crest of the new dam is higher than the crest of the former one, and the conclusion of the court below that the higher water was partly caused by defendant's use of flashboards is justified by the record, the decree enjoining defendant from raising the water higher than formerly by the use of flashboards, but allowing the dam to remain, will be affirmed.

3. EVIDENCE—JUDICIAL NOTICE—WET AND DRY SEASONS—WATERS AND WATERCOURSES.

The court may take judicial notice of the fact that wet and dry seasons would affect the amount of water on low lands.

Appeal from St. Joseph; Johnson (Clayton C.), J. Submitted January 10, 1923.     (Docket No. 87.)     Decided March 22, 1923.  Rehearing denied June 21, 1923.

Bill by Edwin Davenport and others against the Centerville Water & Electric Company to enjoin the maintenance of a dam above a certain height. From the decree rendered, plaintiffs appeal.     Affirmed.

*Frederick M. White,* for plaintiffs.

*Leland H. Sabin, Harry C. Howard,* and *James T. Sloan,* for defendant.

SHARPE, J.     The defendant company and its assignors have maintained a dam on Prairie river, also called Hog creek, in the township of Nottawa in St. Joseph county, about one mile from the village of Centerville, since the year 1857.     It was originally constructed of wood and earth.     In 1904 it was rebuilt of concrete.     Plaintiffs, who own farm lands up the stream, claiming that their low lands have been flooded to a much greater extent since the new dam

was built, filed their bill of complaint herein, praying that defendant be enjoined from raising the water to a greater height than was permitted by the old dam. The answer of defendant is a general denial. In a cross-bill it asked that, if damage to plaintiffs' land had been so occasioned, it should be determined and decree made therefor. Plaintiffs at the hearing announced that no claim for damages would be made.

The hearing was begun before the late Judge Knowlen and continued before the present circuit judge. No opinion was filed. The decree, however, states the facts found at some length. He determined that the crest of the old and the new dam was of substantially the same height, each raising the water 819.4 feet above sea level. A single flashboard was maintained on the old dam, by which the water was raised 820.9 feet above sea level. There are two flashboards on the new dam and their use permits the raising of the water about two feet above the crest. In the decree he limited the right of the defendant to raise the water to 820.9 feet above sea level. Plaintiffs have appealed. They claim that under the proofs the height of the dam and flashboards should have been restricted to 818.73 feet above sea level.

But one question is presented. Does the decree permit the raising of the water to a greater height than it was maintained prior to 1904? The burden of proof is on plaintiffs to establish the affirmative by a preponderance of the evidence. Plaintiffs' testimony is very convincing that their lands have been flooded to a greater extent in recent years than they were before. But three of them, Mr. Balk, Mr. Michaels and Mr. Schermerhorn, owned their lands prior to 1904, when the new dam was constructed. Mr. Balk testified that the water was higher in 1905 and that he then made complaint to defendant's manager. Mr. Michaels testified that he first noticed the

rise of the water seven or eight years before the hearing. Mr. Schermerhorn testified: "I have observed an increase in the height of the water over my land since 1900." The other plaintiffs testified to a gradual increase in the floodage since they purchased. Mr. Templin, who bought in 1919, but who was familiar with the land before that date, testified: "I noticed an increase of water over my land since seven or eight years ago." Mr. Shiveley, who purchased in 1918, testified: "Right now my marsh is drier than when I bought it." This testimony is also convincing that the increased floodage has, in part at least, been due to other causes than the maintenance of the dam.

When the dam was constructed in 1857, floodage rights were secured over the lands below the Cox bridge, which is 1.5 miles by land above the dam. These deeds do not appear in the record, but Mr. Balk, who owns lands in this area, testified that in his deed, executed in 1899, floodage was reserved "at the present height of the dam, and no higher." It is apparent that it was then understood that the dam did not appreciably affect the waters up the stream beyond the Cox bridge. We think the proofs also support this conclusion. This is not important as plaintiffs concede the prescriptive right to flood to the extent the water was raised by the old dam, except in its bearing upon the proofs offered by defendant to show that the new dam does not affect the water above the Cox bridge. Plaintiffs' case rests upon their observations of the condition of their lands from year to year. Were not these conditions affected by other causes, they might be strongly relied upon. But the proofs show (and aside from the proofs we may take judicial notice of the fact) that there were wet and dry seasons and these would much affect the amount of water on these low lands. There is also proof that a number of drains have been constructed since

1904 leading into this stream, some of them draining the waters of lakes of a considerable size.

Frank Cummings, who had had charge of the dam for defendant since 1890, testified:

"I measured the old dam before it was rebuilt in 1904; both before and after. The measurements showed the heights of the two dams nearly the same, the new dam being possibly an inch or an inch and a half lower. We were satisfied the dams were of the same height."

Several witnesses, called by the defendant, who were familiar with the stream before the new dam was constructed, testified that, in their opinion, it raised the water no higher than the old one did. Measurements made and levels taken by an engineer tend to support this claim. We are convinced, as was the trial court, that the crest of the new dam is no higher than the old one was. By the decree, the defendant is enjoined from maintaining flashboards which will raise the water higher than the one on the old dam did. This is all the relief to which plaintiffs are entitled under the proofs.

The decree is affirmed, with costs to defendant.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.